**239 A.2d 716.**

LOCAL 1363, INTERNATIONAL ASS'N OF FIRE FIGHTERS, AFL - CIO *vs.* JAMES DIPRETE, JR., *Mayor, et al.*

MARCH 21, 1968.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

JOSLIN, J. In this civil action in the nature of mandamus, the plaintiff labor union, a duly certified bargaining agent, asks that the mayor and other officials of the city of Cranston be directed to execute a contract incorporating certain agreements relating to work conditions within that city's fire department. The case is here on the plaintiff's appeal from an order of a justice of the superior court dismissing the complaint on the ground that it failed to state a claim upon which relief could be granted.

The substance of the complaint, all allegations of which are accepted as true and construed in the light most favorable to plaintiff, is that early in 1967 the parties, at plaintiff's initiation, commenced negotiations looking to the renewal of a one-year labor contract which would terminate on June 30, 1967. Five bargaining sessions were held, the first on February 4, 1967 and the final one on April 7, 1967. Although the parties reached agreement on a number of substantial matters, they were unable to resolve all of their differences. Left open were such important labor contract considerations as seniority, overtime and call-back pay, special details, vacations, clothing allowances, and longevity pay.

The complaint is silent on what attempts, if any, were made to reconcile those differences. In any event, on June 8, 1967, plaintiff submitted a proposed collective bargaining contract to the mayor with the request that it be executed by the city authorities. It embodied as contractual provisions only those matters which had been agreed upon at the negotiation sessions, and it set out, in addition, a list of those issues which, although considered, had not been

resolved. This action was commenced when the June 30, 1967 expiration date of the existing contract passed without the city having executed the proposed contract. The plaintiff asks that defendants be ordered "* * * to meet with the President of the plaintiff on a day certain, at a place and time to be named * * * and there execute a contract between the parties * * *" in the form proposed.

Whether the plaintiff has stated a claim upon which relief can be granted turns on how we construe G. L. 1956, title 28, chap. 9.1. That act, known as the Fire Fighters' Arbitration Act, is recent legislation which has not heretofore been considered. It was enacted to insure to the permanent members of any paid municipal fire department certain of the well-recognized rights of labor which those employed in private industry have long enjoyed, but which traditionally have been withheld from public employees. While the strike, work stoppages and the slowdown are still outlawed, the act permits fire fighters to organize, to be represented by a labor union of their own choice, to bargain collectively concerning their working conditions, and to submit to arbitration those issues which are not resolved at the bargaining table.

The question to be decided is what does the act require in circumstances such as these where an impasse developed in the negotiations at a time when only some of the substantial matters which were under discussion have been resolved. The plaintiff claims that the controlling statute, properly construed, requires that whatever matters may have been agreed upon, even though less than all in issue, shall be embodied in a formal writing which, upon execution, will become the collective bargaining contract governing the working conditions of the Cranston fire fighters.

In advancing that theory, plaintiff refers us to §§28-9.1-6 and 28-9.1-7. The first of those sections defines the good faith obligation of a city or town which has been requested

to meet for collective bargaining purposes as requiring its appropriate officials to meet and confer in good faith with the fire fighters' bargaining agent and, in addition, as imposing "* * * the duty to cause any agreement resulting from negotiations to be reduced to a written contract * * *." The second section directs that all unresolved issues shall be submitted to arbitration in the event that "an agreement on a contract" is not reached within 30 days following the commencement of the negotiations provided for in §28-9.1-6.

To read those sections as plaintiff does is, in our judgment, to ignore the meaning which is commonly given to the word "agreement." That word, as generally understood, presumes that the parties have arrived at a mutual understanding on all of the matters in negotiation, and it presupposes that an employer and a bargaining agent will reach "an agreement on a contract" only when they are in accord on all of its terms. The same holds true for the municipality's obligation "* * * to cause any agreement resulting from [their] negotiations to be reduced to a written contract * * *." That duty contemplates that the formal written document will serve after execution as a permanent memorial of the entire subject matter of their negotiations. If the word "agreement" is given this meaning, §§28-9.1-6 and 28-9.1-7 cannot be read so as to require the city to execute the incomplete collective bargaining contract which was submitted to it by plaintiff.

The other section upon which plaintiff relies is §28-9.1-12. It provides that "Any *agreements* actually negotiated between the bargaining agent and the corporate authorities *either before,* or *within thirty (30) days after arbitration* * * *" shall constitute the collective bargaining contract governing the fire fighters and the city or town by which they are employed. (italics ours) The plaintiff points to the word "agreements" and argues that the use of the plu-

ral, rather than the singular as in §§28-9.1-6 and 28-9.1-7, compels the conclusion that the city should be directed to execute the proposed contract. We cannot agree.

The §28-9.1-12 definition of what constitutes a collective bargaining contract does not stand alone. It must be considered within the focus of §28-9.1-9 which describes how issues submitted to arbitration pursuant to §28-9.1-7 are resolved, and it provides that a majority decision of the arbitrators shall be binding upon both parties "* * * as to all issues and matters other than issues or matters which involve expenditure of money, and as to those issues and matters, the decision shall be advisory in nature." While it does not mandate post-arbitration negotiations on the monetary issues, the use of the plural of the word "agreement" presupposes that they will take place, and certainly evidences a legislative anticipation that the pressure of public opinion generated by the advisory opinion of the arbitrators on those issues will bring the union and the municipality to the bargaining table in the expectation of reaching a mutually acceptable understanding.

When looked at in the foregoing light, the word "agreements" cannot reasonably be taken to mean that a collective bargaining contract will embody only those terms which have been agreed upon during the 30-day pre-arbitration negotiating period and will omit all matters on which the parties were not then agreed. A more reasonable meaning is that a collective bargaining contract will consist of the parties' mutual understandings on all of the material issues, whether they were agreed upon before arbitration, were determined by the decision of the arbitrators, or were agreed upon at post-arbitration negotiations.

The plaintiff's appeal is denied and dismissed, and the order appealed from dismissing the complaint is affirmed.

*Hogan & Hogan, Thomas S. Hogan,* for plaintiff.

*Jeremiah S. Jeremiah, Jr.,* Assistant City Solicitor, for defendants.